IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MELINDA CRANDALL and BENJAMIN CRANDALL,<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>                    Defendant. | MEMORANDUM  DECISION<br><br>AND ORDER<br><br><br>Case No. 2:11-cv-497-RJS<br><br>Judge Robert J. Shelby |

Plaintiffs Benjamin and Melinda Crandall have brought suit against Defendant American

Family Mutual Insurance Company alleging that American Family failed to provide the full

amount of insurance coverage that it owed them after Ms. Crandall was involved in an

automobile accident.  The Crandalls contend that Ms. Crandall's covered medical damages far

exceed American Family's current settlement offer.  American Family asserts a number of

affirmative defenses and has also filed a Notice of Intent to Apportion Fault to the hospital and

two of the doctors who treated Ms. Crandall.  The Crandalls move for summary judgment on

nine of American Family's affirmative defenses.  (Dkt. 40.)  The Crandalls also move to strike

the Defendant's Notice of Intent to Apportion Fault (Dkt. 65) or, in the alternative, to grant

summary judgment on this issue in the Plaintiffs' favor (Dkt. 67).

For the reasons stated below, the court GRANTS the Crandalls' Motion for Partial Summary Judgment on the nine affirmative defenses and GRANTS the Crandalls' Motion to Strike.  The Crandalls' alternative Motion for Partial Summary Judgment on the Notice of Intent to Apportion Fault is DENIED AS MOOT.

BACKGROUND

On June 26, 2008, Ms. Crandall was involved in an accident that occurred when a vehicle driven by Shannon Henderson struck the rear of Ms. Crandall's car.  At the time of the accident, the Crandalls were insured by American Family under three policies: a Medical Expenses Coverage policy for $100,000; an Underinsured Motorists Coverage (Primary) policy for $100,000; and an Underinsured Motorists Coverage (Umbrella) policy for $1,000,000.  The Crandalls had paid all the required premiums on these policies, and American Family waived its subrogation rights against Shannon Henderson.  Ms. Crandall was treated by Dr. Joel Dall and later received an independent medical evaluation from Dr. Alan Goldman at American Family's request.

Ten months after the accident, on April 7, 2009, Ms. Crandall suffered a stroke that was caused by a separation of the layers in her carotid artery wall, a condition known as carotid artery dissection.  Ms. Crandall was hospitalized and received emergency treatment at Intermountain Medical Center.  The Plaintiffs allege that Ms. Crandall's carotid artery dissection was caused as a result of complications from the car accident.

On March 8, 2011, the Crandalls submitted their medical bills and records to American Family.  The Crandalls asked American Family to repay their expenses up to the policy limits allowed by their coverage.  Instead of paying the $1,100,000 allowed under the three policies,

2

American Family offered to pay the Crandalls $200,000.  The Crandalls allege that American

Family failed to provide any explanation for its decision and refused to raise its offer after the

Crandalls submitted additional evidence of the projected value of Ms. Crandall's future expenses.

As a result, the Crandalls filed a Complaint in Utah state court on April 22, 2011.  American

Family then timely removed the case to federal court.

ANALYSIS

I.      **Standard of Review**

        The court grants summary judgment when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court

"view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the

nonmoving party."  *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir.

2008).

        The burden on summary judgment as to affirmative defenses still lies with the movant,

but "a movant that will not bear the burden of persuasion at trial need not negate the

nonmovant's claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Instead,

> a movant may make its prima facie demonstration simply by pointing out to the
> court a lack of evidence for the nonmovant on an essential element of the
> nonmovant's claim.  If the movant carries this initial burden, the nonmovant that
> would bear the burden of persuasion at trial may not simply rest upon its
> pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set
> forth specific facts" that would be admissible in evidence in the event of trial from
> which a rational trier of fact could find for the nonmovant.

*Id.* (citing Fed. R. Civ. P. 56(e)).

3

**II.**   **Affirmative Defenses**

The Crandalls move for summary judgment on nine of American Family's affirmative defenses.[1]  The court examines these defenses below.

A.   Failure to Mitigate

American Family asserts as a defense that Ms. Crandall failed to mitigate her medical damages.  American Family points to the deposition testimony of the independent medical examiner, Dr. Goldman, as well as the testimony of Ms. Crandall's treating physician, Dr. Dall. Specifically, Dr. Goldman testified that he believed Ms. Crandall's conditions may have been psychosomatic and urged her to seek psychiatric evaluations and treatment.  (Goldman Dep. 17:12-13, Dkt. 51-1.)  Dr. Dall agreed that such treatment could be beneficial and also testified that Ms. Crandall had several unexplained symptoms.  (Dall Dep. 67:22-68:5, Dkt. 51-2.) American Family contends that Ms. Crandall failed to mitigate her damages because she did not seek any psychiatric treatment.

This evidence does not establish a duty to mitigate.  Claims for mitigation require specificity.  *LeBaron & Associates, Inc. v. Rebel Enterprises, Inc.*, 823 P.2d 479, 484 (Utah Ct. App. 1991) ("[T]he doctrine [of mitigation] requires defendant to show with *specificity* why the damages sought are not proper because of successful efforts to mitigate or a failure to reasonably mitigate.") (emphasis added).  Dr. Dall's comment that a psychiatric evaluation could be helpful in treating Ms. Crandall's unexplained symptoms is not specific enough to create a duty to mitigate.  Indeed, Dr. Dall testified that he never made this recommendation to Ms. Crandall.

---

[1]These defenses are numbered 4-7, 9, 14, 15, 17, and 19 in American Family's Answer to the Plaintiffs' Amended Complaint.  (Dkt. 30.)

(Dall Dep. 66:21-22, Dkt. 51-2 ("Q: Have you ever recommended [neuropsychiatric testing]? A: No.").)   While Dr. Goldman did suggest to Ms. Crandall that she receive a psychiatric evaluation, he was examining her not as a treating physician but as an independent medical examiner.  His recommendation did not create a duty for Ms. Crandall to obtain psychiatric treatment.  In any event, American Family has not established that a psychiatric evaluation would have mitigated Ms. Crandall's medical damages.

For these reasons, the court dismisses American Family's affirmative defense for failure to mitigate.

B.   Fraudulent Claims and Unclean Hands

American Family advances as affirmative defenses that the Crandalls submitted fraudulent claims and that the Crandalls had unclean hands.  As support for these defenses, American Family argues that the claims for damages from Ms. Crandall's carotid artery dissection and stroke lack medical support.  The court disagrees.  While these claims may eventually fail, there is enough evidence in the record to show that the Crandalls' claims are at least colorable.  Dr. Goldman opined that 60% of Ms. Crandall's ongoing medical care was caused by the underlying accident**.**  (Goldman Evaluation, at 17-18, Dkt. 56-4.)  And Dr. Dall testified that "trauma can cause a dissection of the carotid artery." (Dall Dep. 82:24-25, Dkt. 51-2.)  This medical evidence is sufficient to demonstrate that the Crandalls had a good faith basis to pursue their claims.

American Family asserts that the Crandalls' refusal to permit independent doctors to examine Ms. Crandall is further evidence of fraud.  At first, the Crandalls refused to be seen by several of American Family's preferred doctors.  But Ms. Crandall did submit to an evaluation by

Dr. Goldman, an independent medical examiner who was chosen by American Family.  The

negotiation between the parties to find a mutually agreeable medical examiner is not evidence of

any bad faith or a desire to defraud the insurance company.

American Family can point to no specific evidence that would permit a rational fact-

finder to draw an inference of fraud or bad faith.  As a result, the court dismisses American

Family's affirmative defenses for fraudulent claims and unclean hands.

      C.     <u>Remaining Affirmative Defenses</u>

American Family's only contention in support of its remaining affirmative defenses on

which the Crandalls have moved for summary judgment is that the Crandalls failed to comply

with local rule DUCivR 56-1(b) by not incorporating all references to answers to interrogatories

into the factual section of their motion.  The court finds this argument unpersuasive.  The court

and American Family can discern the relevant legal issues and factual disputes.  American

Family clearly had notice of its own interrogatories and the answers it supplied.  Moreover, the

Crandalls appropriately incorporated by reference the interrogatories as exhibits to their motion.

(*See* Pl.'s Mem., at 4, Dkt. 41.)  Because American Family advances no further argument on

these affirmative defenses, it has not met its burden opposing summary judgment.  Accordingly,

the court dismisses the remaining affirmative defenses on which the Crandalls have moved for

summary judgment.

**III.    Motion to Strike Notice Of Intent To Apportion Fault**

American Family seeks to apportion fault to Intermountain Medical Center and two

doctors who were involved with Ms. Crandall's treatment when she suffered her stroke.

American Family filed a Notice of Intent to Apportion Fault on March 5, 2013, a week after it

took the deposition of Dr. Barbara Futrell, Melinda Crandall's treating neurologist.  American Family contends that Dr. Futrell's testimony was the first time that it learned the factual basis for its Notice.  The Crandalls move to strike American Family's Notice, arguing that the Notice is untimely, fails to comply with Utah Code Ann. §78B-5-818 and DUCivR 9-1, and is prejudicial.

The court agrees with the Crandalls that American Family's Notice is untimely, coming two years after the Crandalls made their initial disclosures on July 15, 2011.  These disclosures contained a May 13, 2009, medical record in which Dr. Futrell noted that Ms. Crandall suffered what was "[c]learly a fresh stroke—much of which was caused by a delay in treatment."  (Futrell Record, at 4, Dkt. 79-1.)  American Family points out that this notation was buried in 1,400 pages of medical record disclosures.  But the length of a record does not absolve a party from its responsibility to examine that record and be aware of any claims or defenses that may be asserted based on the information the record contains.

American Family also argues that its Notice was filed more than 90 days before trial and was therefore timely under DUCivR 9-1 and Utah Code Ann. §78B-5-818.  But this contention misreads the statute and local rule.  "[T]he 90-day before trial default period is applicable only if the first two provisions—filing 'as ordered by the court' or within a reasonable time after discovery—are not applicable."  *Mason v. Brigham Young Univ.*, 2008 WL 312920, at *3 (D. Utah Feb. 1, 2008).  Here, given American Family's early possession of information on which to base an apportionment claim, the filing of the Notice was not made within a reasonable time after discovery.  As a result, the 90-day rule is inapplicable.

Even if it were timely, the Notice does not contain the specific factual support necessary for a medical negligence claim that is required under DUCivR 9-1.  Utah law is clear that fault

apportioned under a theory of medical negligence requires expert medical testimony except in

rare cases not applicable here.  *See, e.g.*, *Beard v. K-Mart Corp.*, 12 P.3d 1015, 1019 (Utah App.

2000) (expert testimony needed to establish causal link, especially "[w]here the injury involves

obscure medical factors which are beyond an ordinary lay person's knowledge").  American

Family has designated no expert and offers only Dr. Futrell's opinions in this regard.  But Dr.

Futrell admitted that she is not an expert in the required area of medical malpractice, or at the

very least has not done the work to prepare herself as an expert.  (*See* Futrell Dep. 200:15-19,

Dkt. 74-2.)  American Family has submitted no expert reports for Dr. Futrell, no explanations of

the scientific bases for Dr. Futrell's opinions, no description of the standard of care required, no

explanation of how Dr. Futrell determined that standard of care, and no explanation of how the

three nonparty defendants breached that standard of care.  In short, there is nothing that would

allow the court to recognize Dr. Futrell as a medical expert on the issues of medical negligence

and malpractice.  *See, e.g.*, *McCollin v. Synthes, Inc.*, 50 F.Supp.2d 1119 (D.Utah 1999) (noting

that "[w]ithout proper grounding in valid scientific methodology . . . [a doctor's] conclusions are

speculative at best" and do not meet the standards for expert testimony).

       Finally, the Notice is prejudicial to the Crandalls.  As the Crandalls point out, the

deadlines for discovery, designating experts, taking expert depositions, joining other parties, and

filing dispositive motions have all passed.  American Family notes that the Crandalls were aware

of Dr. Futrell's opinions for some time and elected not to pursue a medical malpractice claim

against the three non-parties.  But it is not the Crandalls' burden to divine preemptively what

defenses American Family may ultimately elect to assert.  The purpose of pleading affirmative

defenses "is to ensure that parties have adequate notice of the issues and facts in the case."

*Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 534 (Utah 2002).  The Crandalls had no such

notice, and consequently no opportunity to develop a record in response.  Moreover, the

Crandalls are allowed to pursue their lawsuit as they deem best.  They are not required to pursue

medical malpractice claims here.

American Family's Notice of Intent to Apportion Fault is untimely, prejudicial, and lacks

the sufficient factual support required under DuCivR 9-1.  As a result, the court strikes the

Notice.

## IV.    Motion for Summary Judgment on Notice of Intent to Apportion Fault

Because the court grants the Crandalls' Motion to Strike the Notice of Intent to Apportion

Fault, the court need not reach the Crandalls' Motion for Summary Judgment on this issue.  But

in any event, the court notes that Utah's comparative fault statute does not apply to a contract

action.  *See, e.g.*, *L-3 Commc'ns Corp. v. E.R. Lewis Transp., Inc.*,  2005 WL 3591987, at *2 (D.

Utah Dec. 30, 2005) (noting the argument that "the tort principle of comparative fault should be

applied to Plaintiff's breach of contract claim . . .  is clearly incorrect and is against the great

weight of legal authority.").  American Family has cited no case, rule, or policy distinction that

would create an exception for the contract dispute at issue here.

As a result, summary judgment on the Notice of Intent issue in the Crandalls' favor

would be appropriate even if American Family had timely filed its Notice.

CONCLUSION

For the foregoing reasons, the court GRANTS the Crandalls' Motion for Summary

Judgment on American Family's Affirmative Defenses (Dkt. 40) and the Crandalls' Motion to

Strike (Dkt. 65).  The Crandalls' Motion for Summary Judgment on the Notice of Intent to

Apportion Fault (Dkt. 67) is DENIED AS MOOT.

There are two additional matters that are currently pending in this case.  The court will address the Plaintiffs' Objections to Magistrate Judge Furse's Decision (Dkt. 88) in a separate order.  The court will address the Plaintiffs' Motion to Determine *Daubert* Issues (Dkt. 61) in the course of preparing for trial.

The court sets a five-day jury trial on the Plaintiffs' breach of contract and loss of consortium claims to begin on February 10, 2014, at 1:00 p.m.  The court will hold a final pretrial conference on January 27, 2014, at 2:30 p.m.  Approximately sixty days before the trial date, the court will issue a trial order containing additional deadlines.

SO ORDERED this 28th day of October, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge